Mr. Bobby Norman, Director Law Enforcement Standards and Training P.O. Box 3106 East Camden, Arkansas 71701
Dear Mr. Norman:
This is in response to your request for an opinion concerning the training and certification of home detention personnel as required by Act 809 of 1989. That act gives judges the authority to require the defendant, as a condition of probation or the suspension of a sentence, to participate in a home detention program under which the defendant's presence in the home is monitored electronically. It also authorizes the creation of a "home detention commission" composed of the circuit judges of the Sixth Judicial District. The commission is authorized to appoint a director, who may then appoint employees to assist her in the performance of her duties. Section 6 (D) of the act requires that the director's deputies (surveillance and probation) be certified through the Arkansas Commission on Law Enforcement Standards and Training. You have set out what you believe to be several provisions of law relevant to the issues and have posed four questions relating to those provisions. Your questions will be set out below and answered in the order posed.
Your first question is as follows:
 Does the home detention commission, created by the Governor and composed of circuit judges as stated in Act 809 of 1989, have the same appointment power as the courts as stated in Act 617 of 1983?
The section to which you refer, Act 617 of 1983, is now codified at A.C.A. 16-93-103, and it provides as follows:
 (a) All probation officers appointed by a court, whether circuit or municipal, and all parole officers employed by the Arkansas Department of Correction may execute, serve, and return all lawful warrants of arrest issued by the State of Arkansas or any political subdivision thereof and are otherwise authorized to make lawful arrests as any law enforcement officer of the state of Arkansas.
 (b) All such parole and probation officers are further authorized to carry firearms during all hours in which they are actively pursuing the obligations and duties of the office to which they are appointed or employed, but only if the officers have been duly certified under 12-9-201, 12-9-202, 12-9-205, and 12-9-206.
Although it is not entirely clear, we interpret your question as inquiring whether the home detention personnel appointed by the Director of the Commission have the powers set out in 16-93-103. A question arises because the statute grants powers to probation officers appointed by courts. The home detention "probation deputies" are appointed by the director of the commission, who herself was appointed by the commission, which is made up of the circuit judges of the circuit courts in the Sixth Judicial District. See Act 809 of 1989, 5 and 6. Thus, these personnel are not technically appointed by a court. They are appointed by the Director of a commission created by the Governor after a petition from a majority of the legislators of the Sixth Judicial District. See 5 of Act 809. The commission, however, is composed of the circuit judges of the Sixth Judicial District.
Although a commission created by law has been held not to be a "court", as the General Assembly does not have the power to create "courts" (Ward School Bus Manufacturing v. Fowler, 261 Ark. 100,547 S.W.2d 394 (1977), in some instances the words "judge" and "court" have been used as convertible or interchangeable terms. "The judge is sometimes spoken of as the court, and against the court is referred to as the judge." Dobson v. State, 69 Ark. 376,378 (1901). It may be argued that the home detention probation deputies are appointed by a "court", or at least several "courts" acting in concert, because they are appointed by the Director of a commission composed of "courts" or judges.
The primary goal, however, is to give effect to the intention of the legislature. We have scant evidence of legislative intent on the question. Act 617 of 1983, which gives certain powers to probation officers appointed by "courts", was adopted long before the advent of home detention programs as enacted by 809 of 1989. We simply do not know whether its provisions were intended to apply to "home detention" probation deputies. The absolute silence of Act 809 of 1989 as regards the powers of these deputies compounds the uncertainty. It might be argued that if the legislature had not intended these deputies to have powers similar to those enumerated in A.C.A. 16-93-103, they would not have required them to be certified. We simply are without evidence, however, from reviewing the face of the act itself, as to legislative intent in this regard. It appears that the technical language of A.C.A. 16-93-103 does not apply. The fact that these powers are not granted under that particular statute is not, however, in my opinion, conclusive evidence that the legislature did not intend them under Act 809 of 1989. This is simply a question which demands legislative clarification.
Your second question is as follows:
 Does [sic] the project director, probation officers, and surveillance officers as listed in Act 809 of 1989, have the powers to enforce criminal, traffic, or highway laws of this state?
Your question refers to the definition of a "law enforcement officer" as defined in Act 452 of 1975, now codified at A.C.A.12-9-102(1) (Supp. 1989). (Cf. A.C.A. 5-1-102 (12)). Under that section, "law enforcement officer" means any appointed law enforcement officer who is responsible for the prevention and detection of crime and the enforcement of the criminal, traffic, or highway laws of this state. The provision is found in the statutory chapter entitled "Law Enforcement Officer Training and Standards". It is my understanding that the commission interprets the chapter as requiring it to certify and train only "law enforcement officers", as that term is defined in the act.
The question of whether the project director, probation officers, and surveillance officers have the power to enforce criminal, traffic, or highway laws of this state, is unclear under present law. Their powers and duties are not set out in the act creating the positions. Reference to other statutes governing probation officers is of little help in resolving the question because these "home detention" probation officers are novel. It is possible that the legislature intended these deputies to be invested with the same powers as other probation officers in the Sixth Judicial Circuit, that is, that they be invested with the same powers of deputy sheriffs, including the power to make arrests, carry weapons, and serve summons. See A.C.A. 16-13-1412 (Suppl. 1989.) If they are possessed of these powers, they may indeed be responsible for "enforcing the criminal laws of the state". On the other hand, the legislature may not have intended to grant these powers to "home detention" deputies, due to the particularized character of their work. We are again simply without evidence of legislative intent on the question. It appears clear that they would not be "responsible" for enforcing the traffic or highway laws of the state; but they may to a degree be responsible for enforcing the "criminal" laws of the state. The issue, again, demands legislature clarification.
Your third question is whether the project director, probation officers, and surveillance officers qualify as "law enforcement officers" as defined in Act 452 of 1975. This question is in part identical to your third question answered above. Your fourth question involves a determination of whether these home detention personnel fit that part of the definition of "law enforcement officer" which you omitted in phrasing your third question; that is, whether these individuals are responsible for the prevention and detection of crime. It is my opinion that the home detention probation deputies most likely, at least in a general sense, are not responsible for the prevention and detection of crime. This function is left as a general rule to other cogs in the law enforcement machinery.
Your fourth question is phrased as follows: Under what category are these employees to be certified as required in Section 6 (D) of Act 809 of 1989? We can find no provision of law indicating different "categories" of certification, and as such are unsure as to the precise nature of your question. We will note, however, that although the conclusions reached thus far in this opinion are, by virtue of Act 809, necessarily indefinite, one thing is completely certain under that act. The Director and the surveillance and probation deputies must be certified through the Arkansas Commission on Law Enforcement Standards and Training. The language of the act in this regard is unambiguous. Even if these personnel are not "law enforcement officers" as defined in Act 452 of 1975, Act 809 requires their certification, and to the extent of any conflict, governs. See Act 809, Section 23, and generally, State v. Lawrence, 246 Ark. 644, 439 S.W.2d 819 (1969). If the Commission on Law Enforcement Standards and Training is uncertain of its administrative responsibilities in this regard, it may promulgate rules and regulations, which are not inconsistent with law, governing the performance of its duties.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.